**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF HAWAII**

| | |
|---|---|
| In re<br><br>CARLITO TAGUINOD LANGCAY,<br><br>Debtor. | Case No. 09-2560<br>Chapter 7 |
| DWIGHT SHIMODA,<br><br>Plaintiff,<br><br>vs.<br><br>CARLITO TAGUINOD LANGCAY and CLAIRE ANGELYN M. GARCIA LANGCAY,<br><br>Defendants. | Adv. Pro. No. 10-90001<br><br>Re: Docket No. 1 |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The trial of this adversary proceeding was held on August 30 and September 1, 2010. Jacob M. Merrill represented the plaintiff, and defendant Carlito Taguinod Langcay represented himself.

Based on the evidence, the court makes the following

## FINDINGS OF FACT:

1. During 2005, plaintiff Dwight Shimoda ("Dwight") transmitted about $17,000 to defendant Claire Angelyn M. Garcia Langcay ("Claire") in the Phillipines. Dwight sent the money to Claire to pursue a business venture with Claire in the Phillipines. The business venture did not materialize. Dwight claims that Claire swindled him.

2. On December 14, 2007, Dwight sued Claire in the District Court of the First Circuit, State of Hawaii. In his complaint, Dwight alleged that, "On or about March 2006, [Claire] owed money to [Dwight] as follows: $17[,]000.00 plus damages of $3000.00. Did not mange funds well[,] rob once[,] and invest in real estate."

3. On January 29, 2008, Dwight amended his complaint to add Claire's husband, Carlito T. Langcay ("Carlito"), as a defendant. The factual allegations of the amended complaint were unchanged. Dwight later dismissed his claims against Carlito without prejudice.

4. After a trial, the district court entered judgment in favor of Dwight and against Claire in the amount of $22,682.03.

5. The district court's judgment does not set forth the legal basis for Claire's debt to Dwight; in particular, it does not establish that the debt is for fraud.

Dwight did not offer in evidence in this adversary proceeding the district court's findings of fact or conclusions of law. Dwight did not offer any evidence in this adversary proceeding that Claire fraudulently induced him to send her the money.

6. Carlito and Claire filed a motion to set aside the judgment. In support of the motion, Carlito and Claire provided their attorney with a series of emails purportedly sent by Dwight to Claire. In one of the emails, Dwight purportedly admitted that he had lied in court. The attorney concluded that Dwight had not sent the emails and that instead someone else had produced them by a technique called "swooping." The district court allowed the attorney to withdraw from representing Claire and Carlito and denied the motion to set aside the judgment.

7. On October 6, 2009, Dwight filed a complaint against Claire and Carlito in the Circuit Court of the First Circuit, State of Hawaii. The complaint alleged that Claire and Carlito's presentation of the emails in the district court case amounted to fraud.

8. Carlito commenced his chapter 7 bankruptcy case before the circuit court case was decided.

9. Dwight's complaint in this adversary proceeding alleges that Dwight's claims against Carlito are not dischargeable under 11 U.S.C. § 523(a)(2)(A), which bars the discharge of "any debt . . . for money . . . to the extent obtained by . . .

false pretenses, a false representation, or actual fraud . . . ."[1]

10. Dwight failed to prove, by a preponderance of the evidence, that Carlito had any involvement in the transactions between Dwight and Claire, or that Carlito even knew Claire when those transactions took place. In making this finding, I have weighed all of the evidence, including the following:

a. Dwight testified that, during 2005, Claire told him that she was dating a "Sony engineer." During that period, Carlito worked at Sony as a technician. At trial, Claire denied saying this to Dwight, and both Claire and Carlito testified that they did not meet until January 2006, after Claire's transactions with Dwight were completed. The weight of the evidence supports Carlito's testimony.

b. At trial, Carlito offered in evidence a series of emails purportedly sent by Dwight to Claire, many of which were also presented to the district court. The emails were offered to show that Dwight wished to have a romantic relationship with Claire. I find that Dwight was not the author of any of those emails. I listened to and observed both Dwight and Claire during the trial,

---

[1]The cover sheet to Dwight's complaint states that the complaint also states claims under 11 U.S.C. § 727. This is incorrect. The complaint states no such claims, and Dwight offered no evidence or argument at trial to support any such claim.

and I am firmly convinced that Claire, not Dwight, authored all of the emails. The tone, content, and style of the emails sound just like Claire and not at all like Dwight. Even if they were genuine, however, the emails do not establish that any debt which Claire or Carlito owes to Dwight is for fraud.

c. The process server who served the amended complaint on Carlito in the district court case testified that, when he was served, Carlito said, "I told this guy already that we spent the money," or words to that effect. The process server's veracity is questionable because he filed a false return of service with the district court. He testified at trial that he served Carlito at Carlito's workplace, but he swore in his return of service that he served Carlito at Claire's residence. His return of service also falsely stated the address at which he served Carlito. Aside from that, the statement which he attributes to Carlito is far from a clear admission of responsibility, especially since Carlito did not seem (at trial) entirely comfortable with his english language skills.

d. Dwight offered testimony from another creditor of Claire's who claimed that Claire borrowed money from her husband (after the witness refused to lend money to Claire herself) based on Claire's false statement that she needed the money to start a business. Carlito could have successfully objected to much of the testimony on the grounds of hearsay and relevance. Further, the other transaction



U.S. Bankruptcy Court - Hawaii #10-90001 Dkt # 46 Filed 09/09/10 Page 5 of 12

had features that I find incomprehensible and suspicious, and Claire disputed most of the witness' account. I find this testimony unhelpful and give it no weight.

e. In his closing argument, Dwight's counsel argued that Carlito was motivated to help Claire steal Dwight's money because Carlito's ex-wife had taken all of his savings just before their divorce. No evidence supports this assertion.

f. Dwight argues that Carlito admitted liability to Dwight by listing Dwight as a creditor in his bankruptcy schedules. This contention has no weight. Prudent bankruptcy attorneys always list all of the debtor's potential liabilities, even those which they debtor disputes or are based on the thinnest grounds, in order to ensure that the debtor gets the broadest possible discharge of debt. Moreover, Carlito stated in the schedules that he "vehemently denies" Dwight's claims.

Based on the foregoing findings of fact, the court makes the following

**CONCLUSIONS OF LAW**:

1. The court has jurisdiction over this adversary proceeding, which is a core proceeding in bankruptcy. 28 U.S.C. § 157(b)(2)(I) (2006). Venue is proper.

2. In order to prevail in this adversary proceeding, Dwight must establish that (a) Carlito owes Dwight a debt and (b) that debt is not dischargeable under



U.S. Bankruptcy Court - Hawaii #10-90001 Dkt # 46 Filed 09/09/10 Page 6 of 12

section 523(a)(2)(A), meaning that the debt is "for money . . . to the extent obtained by . . . false pretenses, a false representation, or actual fraud . . . ."

**A. Carlito Owes No Debt to Dwight.**

3. Dwight's complaint alleges that Carlito is liable to Dwight for fraud.

4. The elements of common law fraud in Hawaii are: (1) false representations made by the defendant; (2) with knowledge of their falsity (or without knowledge of their truth or falsity); (3) in contemplation of plaintiff's reliance upon them; and (4) plaintiff's detrimental reliance. Fisher v. Grove Farm, Co. Inc., 123 Hawaii 82, 103, 230 P.3d 382, 403 (Haw. App. 2009); Larson v. Pacesetter Systems, Inc., 74 Haw. 1, 29, 837 P.2d 1273, 1288 (1992); Hawaii's Thousand Friends v. Anderson, 70 Haw. 276, 286, 768 1293, 1301 (1989); Kang v. Harrington, 59 Haw. 652, 656, 587 P.2d 285, 289 (1978). Additionally, the plaintiff must show that he suffered substantial pecuniary damage caused by reliance on the defendant's statements. Id.; see also Ellis v. Crockett, 51 Haw. 45, 52, 451 P.2d 814, 820 (1969) ("The aim of compensation in deceit cases is to put the plaintiff in the position he would have been had he not been defrauded."). The party claiming fraud must prove all of the elements by clear and convincing evidence. Shoppe v. Gucci America, Inc., 94 Hawaii 368, 386, 14 P.3d 1049, 1067 (2000); TSA Int'l, Ltd v. Shimizu, 92 Hawaii 243, 251, 990 P.2d 713, 725 (1999).

5. Dwight has failed to prove any of these elements. In particular, there is no evidence that Carlito made any false representations to Dwight upon which Dwight reasonably relied to his detriment and which caused pecuniary loss to Dwight.

6. Dwight relies heavily on the emails which Carlito claims Dwight wrote but which I have found were actually written by Claire. There is a substantial chance that Carlito was involved in creating the emails or at least knows that Dwight did not write them. There is no evidence, however, that Dwight suffered pecuniary harm as a result of the emails. By the time they surfaced, Dwight had long since sent his money to Claire in the Phillipines. The emails were created in an attempt to set aside Dwight's judgment against Claire, but the attempt failed, and Dwight's judgment stands. Claire (and possibly Carlito) created the emails in an unsuccessful attempt to defraud the district court and this court, but this is not the same as a fraud on Dwight.

7. At trial, Dwight argued that Carlito is liable under the theories of civil conspiracy and aiding and abetting. Dwight apparently contends that Claire defrauded Dwight and that Carlito is liable for her misconduct.

8. Civil conspiracy is the "combination of two or more persons or entities by concerted action to accomplish a criminal or unlawful purpose, or to

accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means." Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co., 91 Hawaii 224, 252 n. 28, 982 P.2d 853, 881 n. 28 (1999) (citing Duplex Printing Press Co. v. Deering, 254 U.S. 443, 466, 41 S.Ct. 172, 65 L.Ed. 349 (1921)), superseded by statute on other grounds. Concerted action, by itself, does not constitute a claim for relief; rather, such action must include "either that the alleged conspirators had a criminal or unlawful purpose for their concerted action or that the alleged conspirators used criminal or unlawful means to accomplish a lawful objective." Miyashiro v. Roehrig, Wilson & Hara, 122 Hawaii 461, 482, 228 P.3d 341, 362 (Haw. App. 2010).

9. Similarly, aiding and abetting necessarily requires an underlying cause of action:

> Persons who aid and abet another in the commission of a fraud may be liable for that fraud if the plaintiff alleges and proves *in addition to the perpetration of the underlying fraud* that there was knowledge of this fraud on the part of the aider and abettor, and substantial assistance by the aider and abettor in achievement of the fraud, and that damages to the plaintiff were proximately caused thereby.

37 AM. JUR. 2D FRAUD & DECEIT § 302 (updated Jul. 2010) (emphasis added).

10. Carlito is not liable to Dwight for civil conspiracy or aiding and abetting. Dwight did not produce any evidence (other than the state court's judgment) to substantiate his claims against Claire. As far as the record in this case

reveals, the judgment against Claire could have been based on a simple breach of contract theory. Without a valid underlying claim of fraud or similar wrongdoing, there can be no claim against Carlito for civil conspiracy or aiding and abetting.

11. Even if the state court judgment against Claire rested upon fraud, Dwight still has not shown that Carlito had any involvement in or knowledge of the alleged fraudulent transactions. Therefore, Carlito is not liable for civil conspiracy or aiding and abetting.

**B. Carlito's Debt to Dwight (If Any) is Dischargeable**

12. Even if Dwight had established that Carlito owes him a debt, Dwight would still have the burden of proving that the debt is excepted from the bankruptcy discharge.

13. Dwight relies on section 523(a)(2)(A) of the Bankruptcy Code, which provides:

> A discharge under ... this title does not discharge an individual debtor from any debt -
> ...
> (2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by -
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a) (2009); see also Cohen v. de la Cruz, 523 U.S. 213, 218-22,

118 S. Ct. 1212, 1216-19 (1998) (interpreting the fraud exception under section 523(a)(2)(A) of the Bankruptcy Code). To prevail on a claim under § 523(a)(2)(A), a creditor must demonstrate five elements:

(1) misrepresentation, fraudulent omission or deceptive conduct by the debtor;

(2) knowledge of the falsity or deceptiveness of his statement or conduct;

(3) an intent to deceive;

(4) justifiable reliance by the creditor on the debtor's statement or conduct; and

(5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

In re Weinberg, 410 B.R. 19, 35 (9th Cir. B.A.P. 2009); Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000); Am. Express Travel Related Servs. Co. v. Hashemi (In re Hashemi), 104 F.3d 1122, 1125 (9th Cir. 1996). A creditor seeking to establish an exception to the discharge of a debt bears the burden of proof. FED. R. BANKR. P. 4005; see also In re Niles, 106 F.3d 1456, 1464-65 (9th Cir. 1997). A creditor must meet this burden by a preponderance of the evidence. In re Slyman, 234 F.3d at 1085; Grogan v. Garner, 498 U.S. 279, 286, 111 S. Ct. 654, 659 (1991). Exceptions to discharge are construed strictly against the creditor and liberally in favor of the



U.S. Bankruptcy Court - Hawaii #10-90001 Dkt # 46 Filed 09/09/10 Page 11 of 12

debtor. Snoke v. Riso (In re Riso), 978 F.2d 1151, 1154 (9th Cir. 1992); see also National Union Fire Insurance Co. of Pittsburgh v. Bonnanzio (In re Bonnanzio), 91 F.3d 296, 300 (2d Cir. 1996); Meyer v. Rigdon, 36 F.3d 1375, 1385 (7th Cir. 1994).

14. Dwight has failed to prove these elements. There is no evidence that Carlito personally made any misrepresentations by word or deed to Dwight upon which Dwight relied and which resulted in harm to Dwight. As is noted above, there is no evidence that Carlito (or Claire) obtained money by "false pretenses, a false representation, or actual fraud," that Dwight relied on these emails, or that his reliance caused him harm.

15. The emails which Claire wrote and falsely attributed to Dwight do not satisfy section 523(a)(2)(A). A debt is excepted from the discharge only to the extent that the debt is for money, property, or credit obtained through fraud. The emails were forged, but neither Claire nor Carlito obtained any money or other thing of value from Dwight as a result of them.

The court will enter a separate and final judgment in favor of the defendant.

UNITED STATES BANKRUPTCY COURT DISTRICT OF HAWAII

***/s/ Robert J. Faris***
**United States Bankruptcy Judge**
Dated: **09/09/2010**